IN THE UNITED STATES DISTRICT COURTS
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TRACY NEFF o/b/o                                                      PLAINTIFF
BREANNA E. SESSIONS

    v.                            CIVIL NO. 05-4055

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Tracy Neff, brings this action on behalf of her minor daughter, Breanna, seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner), denying Breanna's application for child's supplemental security income (SSI), benefits under Title XVI of the Social Security Act.

**Background:**

Plaintiff protectively filed an application for SSI on Breanna's behalf on August 25, 2003, alleging that Breanna has been disabled since June 1, 1991, due to seizure disorder, oppositional/defiant disorder, and adjustment disorder.[1] (Tr. 61-63, 65). An administrative hearing was held on January 11, 2005. (Tr. 436-472). Plaintiff and were present and represented by council.

The Administrative Law Judge ("ALJ"), in a written decision dated April 14, 2005, found that Breanna's oppositional/defiant disorder and adjustment disorder were severe, but did not meet, medically equal, or functionally equal any listed impairment. (Tr. 34). Further, he concluded that Breanna did not have an extreme or marked limitation in any domain of functioning. (Tr. 35).

---

[1] However, the ultimate issue is whether the child was under a disability as of or subsequent to the date of the SSI application, regardless of how far back disability may, in fact, be found to extend. See 20 C.F.R. §406.335.

On July 12, 2005, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 5, 8).

**Standard of Review:**

The court's review is limited to whether the decision of the Commissioner to deny benefits to the plaintiff is supported by substantial evidence on the record as a whole. *See Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996). Substantial evidence means more than a mere scintilla of evidence, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Pearles*, 402 U.S. 389, 401 (1971). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996).

In determining the plaintiff's claim, the ALJ followed the sequential evaluation process, set forth in 20 C.F.R. § 416.924. Under this most recent standard, a child must prove that she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(c)(i); 20 C.F.R. § 416.906.

When passing the law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in

2

AO72A
(Rev. 8/82)

the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).

Consequently, under this evaluation process, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. *See* 20 C.F.R. § 416.924(a). First, the ALJ must consider whether the child is engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *See id.* Second, the ALJ must consider whether the child has a severe impairment. *See* 20 C.F.R. § 416.924(c). A severe impairment is an impairment that is more than a slight abnormality. *See id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *See* 20 C.F.R. § 416.924(c). Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings, will it constitute a disability within the meaning of the Act. *See* 20 C.F.R. § 416.924(d). Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability

3

included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. *See* 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005).

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to an impairment in the Listings. *See* 20 C.F.R. § 416.926a(d). A marked limitation is defined as an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2). An extreme limitation is defined as "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *See* 20 C.F.R. § 416.926a(e)(3).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to consider Breanna's mental impairments in combination. The ALJ is required to evaluate all of the child's impairments, and to consider the combined effects of these impairments on the child's overall health and functioning. 20 CFR § 416.924(a). Likewise, because a social security hearing is a non-adversarial proceeding, the ALJ has a duty to fully develop the record regarding the claimant's impairments. *See Stormo v.*

4

*Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). That duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. *Id.*

In the present case, Breanna was found to be suffering from a seizure disorder, oppositional/defiant disorder and adjustment disorder. The ALJ concluded that Breanna's seizure disorder was non-severe, due to the fact that she was non-compliant with her medication and often used her disorder to manipulate her teachers and counselors. (Tr. 23-24). We acknowledge that Breanna's medical records revealed that she had been non-compliant with her seizure medication and treatment, and had been very manipulative, using her seizure disorder to her benefit. (Tr. 305-306, 308, 310, 318, 336, 337, 419). The school counselor, plaintiff's independent counselor, and her psychiatrist documented manipulative behavior, including medication non-compliance, as well as school absences. (Tr. 24, 310, 311-312, 335-337, 345, 354, 360, 427). It was noted that plaintiff often used her seizure disorder and need for counseling as a excuse to get out of classes or skip school all together. (Tr. 335, 336, 337, 345, 354, 360, 423, 433). Further, on March 7, 2003, Dr. Oladele Adebogun, Breanna's psychiatrist, noted that Breanna's agitation, irritability, and talking back were problems that were getting her into trouble at school. (Tr. 307). On June 9, 2003, Dr. Adebogun indicated that Breanna was in need of psychoeducation to improve her treatment compliance. (Tr. 306). Dr. Stephen Whaley, the non-examining, consultative physician even noted that Breanna was oppositional at times. (Tr. 290-291).

However, we are also cognizant of the fact that Breanna was diagnosed with oppositional/defiant disorder, which by its very name indicates the presence of oppositional and defiant behaviors. In fact, the definition of oppositional/defiant disorder is a follows:

5

AO72A
(Rev. 8/82)

> Oppositional/defiant disorder is a recurrent pattern of negativistic defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months, and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, actively defying or refusing to comply with the requests or rules of adults, deliberately doing things that will annoy other people, blaming others for his or her own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive.

DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR, p. 100 (4th ed. 2003). Having found her oppositional/defiant disorder to be severe, however, the ALJ failed to take it into consideration when determining that her medication non-compliance and manipulative behavior were reasons to dismiss her subjective complaints of a seizure disorder. (Tr. 25). Because the record does not make clear whether plaintiff's medication non-compliance and manipulative behaviors were caused by or related to her diagnosis of oppositional/defiant disorder, we believe that this matter should be remanded to the ALJ, so that he may develop the record more fully with regard to this diagnosis. *See Stormo*, 377 F.3d at 806. Therefore, on remand, the ALJ is directed to order a mental consultative examination to determine what effect, if any, Breanna's oppositional/defiant disorder had on her refusal to take her seizure medications, and what role her diagnosis played in causing or contributing to her manipulative behaviors. *See Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984)) (holding that "[i]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision").

### III. Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to Breanna, should be reversed and this matter should be

AO72A
(Rev. 8/82)

remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of July 2006

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**